UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSE HENRY GONZALEZ, Individually and on
Behalf of All Other Persons Similarly Situated,

      Plaintiff,

  v.

AUTO-CHLOR SYSTEM OF NEW YORK CITY,
INC., and ABC CORPORATIONS # 1-10, and
JOHN DOES #1-10, Jointly and Severally,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No.: 1:12-CV-3465 (BMC)

DECLARATION OF PAUL ARGENTO IN SUPPORT OF PLAINTIFF'S MOTION FOR
CONDITIONAL CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE

Dated: New York, New York
   November 16, 2012

SUBMITTED BY:

BRONSON LIPSKY LLP
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
Phone: 212.392.4772

GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Phone: 212.228.9795

*Attorneys for Plaintiff Gonzalez and the
Putative Class Members*

<u>DECLARATION OF PAUL ARGENTO</u>

I, Paul Argento, upon personal knowledge and under penalty of perjury, pursuant to 29 U.S.C. § 1746, state and declare that the following are true and correct:

1.      From May 2008 to May 2009, I worked for Defendant Auto-Chlor System of New York City, Inc. ("Auto-Chlor") as a Technician.

2.      Auto-Chlor provides dishwashing machine installation and repair services for customers throughout New York, New York, Queens, New York, Brooklyn, New York, Bronx, New York and Long Island, New York.

3.      As a Technician for Auto-Chlor, my primary duties were to repair and remove dishwashing machines.

4.      From speaking with them directly, I know that other Technicians who worked for Auto-Chlor performed similar duties as me.  These individuals include John Colilo, John Colisimo, Ron (last name unknown), Cesar (last name unknown).  During these discussions, we would discuss the details of certain jobs.

5.      While working at Auto-Chlor as a Technician, I was paid an hourly rate.

6.      During my regular work schedule as a Technician, I worked Monday to Friday, from 8:00 p.m. to 5:00 p.m.  I would sometimes work beyond 5:00 p.m., working to 8:00 p.m. or 9:00 p.m.  In total, I regularly worked 45 or more hours per week.  I rarely took lunch breaks.

7.      In addition to my regular schedule, I also had to be on-call 24 hours per day, once a week, every 4 weeks.  Meaning, when I was not regularly scheduled to work, Auto-Chlor's automated phone system would forward to me a voicemail that an Auto-Chlor customer would leave, in which they would describe the necessary repair or installation job.  I would then call the customers to advise them when I would arrive to perform the installation or repair work, and then drive to the customers from wherever I was when I received the voicemail.

2

8.      While on-call, I would sometimes receive only one on-call job, after which I would drive home.  While at an on-call job, I would sometimes receive a voicemail advising me of another on-call job, and I would then drive from one on-call job to the next.  More often than not, I had multiple on-call jobs to complete in a day.

9.      I used the "on-call book," which Auto-Chlor provided me, to track the hours that I worked.  The on-call books were either spiral notebooks or black and white journals.  I would pick up the on-call book at the end of my regular shift, and turn it in to my manager before my regular shift began the next day.

10.     In the on-call book, I would write down the time when I first received an on-call job, but before I drove to the job.  In this book, if I did not have another on-call job to go to, I would write down the time when I arrived back home, or wherever I was home when I received the voicemail.  In this book, if I had another on-call job to go to, I would write down when I finished the first job as my "clock out" time for that job, and would write down when I began driving to the next job as my "clock in" time for the next job.  And I would continue to do this until finishing all of my on-call jobs.  Once done with my on-call jobs, I would clock-out once I returned home.

11.     My manager often reduced my total number of on-call hours based on the amount of time he thought it should take to drive to each and to do each job after I submitted my on-call book to him.

12.     I know that Auto-Chlor did not pay me for all of my on-call hours worked because I would calculate how many on-call hours I worked at the end of the week, and I would compare that number with the total number of on-call hours for which I was paid.

13.     I complained on multiple occasions to my manager about not being paid for all of my on-call hours worked.

3

14.     I was regularly not paid for between five or ten hours of on-call time per week.

15.     Because I normally worked over 40 hours in a week, I should have received overtime for the 2 or more hours that I worked for which I was not paid.

16.     From speaking with them, I know that other Auto-Chlor Technicians worked a similar amount of hours per week as me and were similarly not compensated for all of the hours that they worked, as they were also not paid for all of their on-call work.  These individuals include John Colilo, John Colisimo, Ron (last name unknown), Cesar (last name unknown). During these discussions, we discussed that Auto-Chlor was not paying us for every on-call hour we worked and submitted, comparing the number of hours we submitted and the number of hours for which we were paid.

17.     Auto-Chlor did not pay me and, upon information and belief, other Technicians time and one half (1 ½) our regular rate for every hour that we worked in excess of forty (40) hours per workweek.

4

Dated: November _15_, 2012     *Paul Argento*
                                    Paul Argento