UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE HENRY GONZALEZ,
Individually and on behalf of all
others similarly situated,

                Plaintiff,

        -against-                       Case No. 12-CV-3465 (BMC)


AUTO-CHLOR SYSTEM OF NEW
YORK CITY, INC.,

                Defendant.
------------------------------------------------------------X


## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND APPROVAL OF COLLECTIVE ACTION NOTICE


WEINSTEIN, KAPLAN & COHEN, P.C.
Attorneys for Defendants
1325 Franklin Avenue, Suite 210
Garden City, New York 11530
(516) 877-2525

## **TABLE OF CONTENTS**

                                                                          **Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF FACTS ................................................................................. 1

ARGUMENTS ................................................................................................. 8

    I.    **CONDITIONAL CERTIFICATION AND COURT AUTHORIZED
    NOTICE ARE NOT WARRANTED UNDER THE
    CIRCUMSTANCES HEREIN**...................................................... 8

    II.    **PLAINTIFF'S DEMAND FOR A SIX-YEAR NOTICE PERIOD IS
    UNWARRANTED**....................................................................... 13

    III.    **THIS COURT SHOULD REJECT PLAINTIFF'S PROPOSED NOTICE
    AS IT IS UNREASONABLY EXPANSIVE AND THIS COURT SHOULD
    BE INVOLVED IN THE DRAFTING OF ANY COLLECTIVE ACTION
    NOTICE TO ENSURE THAT IT IS NARROWLY TAILORED TO
    REDUCE THE RISK OF PREJUDICE TO ANY PARTY**...................... 14

CONCLUSION ...................................... ............................................................ 14

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                                  <u>PAGE</u>

<u>Amendola v. Bristol-Myers Squibb Co.</u>, 558 F. Supp. 2d 459, 467, n.9 (SDNY 2008).......9

<u>Anglda v. Linens'N'Things, Inc.</u>, 2007 WL 1552511 (SDNY 2007)...........................9, 12

<u>Diaz v. Elecs. Boutique of America, Inc.</u>, 2005 WL 2654270 (WDNY 2005)..............12

<u>Dupler v. Costco Wholesale Corp.</u>, 249 F.R.D. 29, 41 (EDNY 2008)............................10, 11

<u>Dybach v. State of Fla. Dep't of Corr.</u>, 942 F.2d 1562 (11th Cir. 1991).......................8

<u>Evancho v. Sanofi-Aventis U.S. Inc.</u>, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007).....8, 12

<u>Guillen v. Marshalls of MA, Inc.</u>, 750 F. Supp. 2d 469 (SDNY 2010) ........................8, 12

<u>Hoffmann-LaRoche Inc. v. Sperling</u>, 493 U.S. 165 (1989) …...................................8, 14

<u>Hendricks v. J.P. Morgan Chase Bank, N.A.</u>, 263 F.R.D. 78, 86 (D. Conn. 2009) ...........13, 14

<u>In re IPO</u>, 471 F.3d 24 (2d Cir. 2006).........................................................................9

<u>In re Penthouse Exec. Club Comp. Litig</u>, 2010 WL 4340255, at *3 (SDNY 2010).........13

<u>Lin v. Benihana Nat'l Corp.</u>, 755 F. Supp. 2d 504 (SDNY 2010)...............................10, 11

<u>Mendoza v. Casa de Cambio Delgado, Inc.</u>, 2008 WL 938584 (SDNY 2008) ..............11, 12

<u>Morales v. Plantworks, Inc.</u>, 2006 WL 278154 (SDNY 2006)...................................10, 11

<u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233 (11th Cir. 2008) ........................8

<u>Myers v. Hertz Corp.</u>, 624 F.3d 537 (2d Cir. 2010) ................................................8

<u>Prizmic v. Armour, Inc.</u>, 2006 WL 1662614, at *2 (EDNY 2006)...........................9

<u>Richards v. Computer Scis. Corp.</u>, 2004 WL 2211691, at *2 (D.Conn. 2004).................12

## STATEMENT OF FACTS

Defendant, AUTO-CHLOR OF NYC, INC. ("Auto-Chlor") respectfully submits the foregoing Memorandum of Law and the twenty-one affidavits attached thereto, in Opposition to Plaintiff's Motion for Conditional Certification and for Approval of a Collective Notice.

Auto-Chlor is a company that leases commercial dishwashing equipment to businesses in the restaurant industry.  There are essentially seven different positions available at Auto-Chlor on the branch level: (i) branch manager, (ii) salesperson, (iii) installer, (iv) route supervisor, (v) route driver, (vi) rebuilder and (vii) office manager. (See Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit)  While there may be multiple route drivers and salespeople in one branch, there is only one branch manager, one installer, one route supervisor, one rebuilder and one office manager in each branch. (Id.)

The salesperson is paid on commission for signing up new business and for resigning existing customers. (Id.) The installer is paid based on an hourly rate to install the commercial dishwashing equipment and occasionally has to work "on call" to service the equipment. (Id.) The route driver is paid a base hourly rate plus commissions to service the customers on the route by bringing the customers product, selling the customers additional product and occasionally performing minor repairs to the equipment. (Id.) The rebuilder is paid an hourly rate to rebuild and refurbish the commercial dishwashing equipment. (Id.) The office manager is likewise paid an hourly rate to manage the accounts receivable, to dispatch calls, to input customer information and to assist with inputting payroll into the computer. (Id.)  The route drivers report to the route supervisor and all other employees report to the branch manager. (Id.) The branch manager reports to the regional manager, the regional manager reports to the vice president, and the vice president reports to ownership. (Id.)

At the time of hire, every employee is provided with a copy of the Auto-Chlor Employee Handbook, is required to read the Employee Handbook, and is required to sign a Statement of Awareness acknowledging that he or she read and understood that he or she was required to follow the policies set forth therein.  (Employee Handbook, attached hereto as Exhibit "A")  On page 28 of the Employee Handbook, it sets forth the procedure in which all complaints must be made, which is as follows: (1) the employee must advise his Branch Manager of his complaint; (2) if the employee is not satisfied after speaking with his Branch Manager, he is then required to meet with the Regional Manager; and (3) if the employee is still not satisfied, the employee is then required to send a written complaint to the HR person so that an independent investigation may be performed. (Id)  On page 54 of the Employee Handbook, it states that employees are required to work "on call" in addition to their regularly scheduled shift to ensure "round-the-clock" service to Auto-Chlor's customers. (Id.)

For most of the branches, Auto-Chlor's regular business hours are Monday through Friday from 7:30 A.M. until 4:30 P.M. (See Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit) Thus, after 4:30 P.M., in most branches (and after 5:00 P.M. in the Connecticut Branch), the Auto-Chlor automated phone system recording changes to indicate that the branch is closed and that, in the event of emergency that cannot wait until the next business day, the customer should leave a message and someone will return their call. (Id.) If a customer leaves a voicemail message, an alert is sent to the "on call" person's Auto-Chlor issued cell phone and that person is responsible for retrieving that message and responding to the customer. (Id.)  Every employee is required to complete a Customer Service Report (CSR) every time a customer is serviced, which reflects (i) the time the employee arrived at the customer's location, (ii) the name of the customer, (iii) the date, (iv) the problem reported, (v) the work performed, (vi) whether any additional work is required, and (vii)

2

the name of the employee who performed the service. (Id.)  Some of the branches us a CSR that also includes the time the employee left and returned to his home. (See Gonzalez Affidavit)

Contrary to what is set forth in the Complaint, there is no longer a dispute herein that Auto-Chlor pays its employees for their "on call" time from the time he leaves his home until the time he returns home.  (See Affidavits of Gonzalez, Keating and Argento, attached to Plaintiff's Motion) The employee is responsible for tracking his "on call" time by writing down the time he leaves and returns to his home. (See Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit) The way the "on call" time is thereafter reported varies.  (Id.) Some employees will report their time by filling out an "on call" worksheet, some employees use an "on call" log, some employees write their "on call" time on their timecards, and some employees email their "on call" time to the branch manager or office manager. (Id.) While the way the "on call" time is reported varies, every employee must complete and turn in a CSR for every customer serviced during their next shift. (Id.)

The "on call" rotation is shared by the installers, rebuilders, route drivers and, in New Jersey, the route supervisory. (Id.) The frequency of "on call" shifts depends upon the number of "on call" employees at the branch and the practices of the branch.  For the relevant period herein, the "on call" rotation at the Queens Branch consisted of, on average, six to eight employees who were required to be "on call" for one week every six to eight weeks.  (See Villanueva affidavit) For the relevant period herein, the "on call" week at the Queens Branch ran from Friday to Thursday. (Id.) Other branches assign one "on call" weeknight to each "on call" employee and then rotate the weekends.  (See Smith Affidavit; Gonzalez Affidavit; Lacey Affidavit)

Auto-Chlor employees are paid every two weeks based upon the thirteen four-week periods set forth in the Auto-Chlor Service Calendar. (See 2012 Auto-Chlor Service Calendar, attached hereto as Exhibit B)  More particularly, Auto-Chlor's service contract provides that its

3

customers will be serviced every four weeks, or thirteen times a year. (<u>See</u> Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit) Auto-Chlor's payroll coincides with the service calendar for the year, and, thus, employees are paid twice a period, or every two weeks. (Id.) This is an important fact to remember as a vast majority of the payroll documents reference the applicable Period rather than actual dates. (<u>See</u> Gonzalez Affidavit) For example, the timecards will state "P1/Wks1&2", which means Period 1, Weeks 1 and 2. (Id.) To know what dates correlate with that period, you will need to reference the Auto-Chlor Service Calendar attached hereto as Exhibit B. The pay periods run from Sunday through Saturday. (<u>See</u> Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit)

   The Branch Managers for each branch are required to either themselves or have someone else type what is printed on the timecards, "on call" logs and "on call" worksheets, where applicable, into a form spreadsheet called a Payroll Timesheet. (<u>See</u> Sample Set of the timecards, "on call" logs and "on call" worksheets for the first quarter of 2012, attached hereto as Exhibit "C") This Payroll Timesheet includes a detailed statement of the exact time each employee clocked in at the beginning of each regularly scheduled shift, clocked in and out for lunch and clocked out at the end of the day. (<u>See</u> Sample Set of Payroll Timesheets for the first quarter of 2012 and spreadsheet prepared by defendant's attorneys for demonstrative purposes only to analyze the data contained in the sample set, attached hereto as Exhibit "D") This Payroll Timesheet also states the number of "on call" hours reported by the employee for each day of the pay period. (<u>See</u>  Exhibit D)  In some branches, this data is input into the computer by the Office Manager, in other branches it is input by the Branch Manager, and in some branches it is a combination of the two. (<u>See</u> Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit)

4

The Branch Managers are required have all of the data transferred from the timecards, "on call" logs and "on call" worksheets into the Payroll Timesheet by the Monday that follows the end of payroll. (Id.)  Once this has been completed, the Payroll Timesheet is then forwarded onto the Payroll Administrator[1] who checks the Payroll Timesheet for any errata (i.e. vacation time inadvertently carried over from the week prior).  Once the Payroll Administrator has reviewed and collected the payroll from all of the branches, she then forwards the payroll onto ADP, who processes the payroll and prepares the payroll documents. (See ADP Comprehensive Payroll Report for the sample set of the first quarter of 2012, attached hereto as Exhibit "E")

Due to the large volume of documents herein[2], it is respectfully requested that this Court note that the attorneys for the defendant tried to create a sample set that included the payroll records for any employee in any branch who worked "on call" from 2011-2012 to submit with the employee and management affidavits attached hereto as and for unequivocal proof that there is absolutely no basis in fact to plaintiff's claim that Auto-Chlor (a) has any policy wherein it refused to pay its employees time and a half for all hours worked over forty in one week and (b) has any policy of intentionally shorting employees hours as suggested by the plaintiff. Unfortunately, as a result of being without power during Hurricane Sandy, the resignation of the undersigned's only associate unexpectedly and my only two law clerks leaving for finals, producing a sample set that spanned two years proved impossible to complete in the time afforded.

As the 2012 payroll records were readily accessible and still in some sort of organized form, the undersigned has submitted a sample set of the hours worked by, and paid to, the "on

---

[1] The Queens and Plainview Branches submit their payroll to the Regional Manager for review before it is sent to the Payroll Administrator

[2] Defendant has already provided its attorneys with more than nine boxes of payroll documents and approximately 75 emails of electronic records, with more documents to arrive shortly.

call" employees from the various branches in the first quarter of 2012. (Exhibits C-E)  It is respectfully submitted that it is clear based upon the sample set of payroll records as well as the affidavits of the employees and management herein, that there is simply no basis in fact to the plaintiff's allegations herein which will be discussed in full detail herein below.

Plaintiff, JOSE HENRY GONZALEZ ("Henry"), is a former employee of Auto-Chlor who worked for Auto-Chlor as an installer in the branch located in Queens ("Queens Branch") from June 4, 2007 until January 20, 2011.  (See Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; see also Gonzalez Personnel File, relevant portions of which are attached hereto as Exhibit "F")  According to the affidavits and Henry's personnel file, his position was always "installer" and was never "technician" as no such position exists at Auto-Chlor. (See Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit; Smith Affidavit; Gonzalez Affidavit; see also Exhibit A)  As noted above, as each branch has only one installer, Henry was the only installer who worked in the Queens Branch.  Henry was paid $17.00 per hour when he first started out at Auto-Chlor and his pay was increased at one point to $17.50 per hour. (Villanueva Affidavit)

On the date of his hire, May 4, 2007, Henry completed the requisite new hire paperwork and was provided with a copy of the Employee Handbook, which he was required to read and the sign a Statement of Awareness acknowledging that he would adhere to the policies and practices set forth therein. (Exhibit A; Exhibit F, p. 2) Henry was also provided with several uniforms, which were replaced by Auto-Chlor as needed. (See e.g. affidavits submitted herewith)  Henry's regular shift was Monday through Friday from 8:00 A.M. until 5:00 P.M., with a mandatory one hour lunch break each day. (Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Bertkau Affidavit)  In addition thereto, Henry was also required to work "on call" approximately once

6

every six to eight weeks on a rotation schedule with the rebuilder, route supervisor and the approximately five route drivers. (Id.)

While Henry was "on call", it was his responsibility to track his "on call" time and to report that time to his Branch Manager, either orally or in writing, on his next regularly scheduled shift. (Id.) When Henry reported his "on call" time, that time was thereafter input into the Payroll Timesheet and paid to Henry along with his regular shift pay in his next paycheck. (Id.) As the "on call" week did not coincide with the payroll week, however, if Henry did not get his "on call" time to his manager before payroll was complete, Henry's "on call" time was recording in and paid out on the correlating day of the week in the next payroll cycle.

As you will see from Henry's Personnel File, the affidavits submitted herein from Henry's managers and co-workers, Henry was a nice guy, but not a very good employee. (See Exhibit F; see also Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Berktau Affidavit; Ochoa Affidavit)  Henry was not good at his job, was constantly having to be retrained, did not follow instruction from his manager and constantly tried to go over the branch manager's head when he did not like that his work performance was being criticized. (See Villanueva Affidavit; Bugiada Affidavit; Bertkau Affidavit)

Henry's branch manager was frequently critiquing Henry's work and advising Henry that several customers and co-workers had complained about his poor work-performance.  (See Exhibit F; see also Villanueva Affidavit; Lacey Affidavit; Bugiada Affidavit; Berktau Affidavit; Ochoa Affidavit; see also Gonzalez Personnel File, Exhibit F)  In response thereto, Henry became irate, would insult the branch manager and would complain to the Regional Manager, Michael Bugiada. (Id.)  During two such conversations, Henry was fired for insubordination. (Id.)  Henry was rehired the first time, Henry was not the second time which occurred on January

7

20, 2011. (Id.)  After the branch manager refused to rehire Henry, Henry, again, went over the Branch Manager's head and asked the Regional Manager to rehire him, who also refused. (Id.)

<u>ARGUMENTS</u>

### I.   <u>CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE ARE NOT WARRANTED UNDER THE CIRCUMSTANCES HEREIN</u>

The Second Circuit has "provided clear guidance on the standard district courts should apply to motions seeking certification of a 'collective action;" <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010) (citing <u>Hoffmann-LaRoche Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989)). More particularly, the burden is on the plaintiff to establish by admissible evidence that (1) there are other employees (2) who are similarly situated with respect to (a) their job requirements and (b) with regard to their pay provisions.  Id. (quoting <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1259 (11th Cir. 2008).

While recognizing that a modest factual showing is required, the Second Circuit emphasizes that "unsupported assertions" are not sufficient. Id. (quoting <u>Dybach v. State of Fla. Dep't of Corr.</u>, 942 F.2d 1562, 1567 (11th Cir. 1991); <u>see also</u> <u>Evancho v. Sanofi-Aventis U.S. Inc.</u>, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007) (***collective certification "is not automatic"***).  Indeed, the Court must not lose sight of the fact that it is the plaintiff who carries the burden of proving that he and others are actually "similarly situated," and the factual showing "must still be based on some substance." <u>Guillen v. Marshalls of MA, Inc.</u>, 750 F. Supp. 2d 469, 480 (SDNY 2010).

It is respectfully submitted in the case at bar that plaintiff has failed in his burden of proving that there is any basis in fact to the claims made by plaintiff in his Complaint and his Affidavit.  More particularly, plaintiff cannot meet his burden to establish that (1) any employee

8

is similarly situated to him; (2) there is any common policy or scheme to defraud employees; and (3) any similarly situated employee who possess anything more than a conclusory, unsupported claim wishes to join his action. As plaintiff has failed in his burden, it is respectfully submitted that defendant should not be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." Prizmic v. Armour, Inc., 2006 WL 1662614, at *2 (EDNY 2006).

The facts of this case are quite interesting as it appears that each time plaintiff's claims have been challenged or proven to be false, he has changed course herein and come up with a new argument for how he was supposedly wronged.

Indeed, in his Complaint filed 18 months after Henry was fired, Henry essentially claims that (i) Auto-Chlor supposedly had a policy of refusing to pay its employees time and a half for all hours worked in excess of forty in one week; (ii) Auto-Chlor supposedly did not compensate employees for their travel time while "on call", and (iii) Auto-Chlor supposedly had an obligation to clean the employees' uniforms and failed to do so. (See Complaint, attached hereto as Exhibit "G") It is respectfully submitted that it has since been made clear that none of the allegations in the Complaint are true. See Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467, n.9 (S.DNY 2008) (citing In re IPO, 471 F.3d 24 (2d Cir. 2006)) (*a review of the merits can under certain circumstances be appropriate at the conditional certification stage*); see also Guillen, supra at 476 n.1 (*recognizing that FLSA merit analysis may be appropriate at the first step*); Anglda v. Linens'N'Things, Inc., No. 06 Civ. 129041 (CM) (LMS), 2007 WL 1552511, at *3-5 (SDNY 2007)

As to the first claim, the Sample Timecards, Worksheets, Payroll Timesheets and ADP records attached hereto, all of which constitute business records, provides unequivocal, admissible evidence that Auto-Chlor did, in fact, pay its employees time and a half for all hours

9

worked in excess of forty in one week and that Auto-Chlor has no such policy refusing to do so. (Compare Exhibit G with Exhibits C-E) As to plaintiff's second claim, he appears to have abandoned that claim since he has now admitted in his affidavit in support of this motion that his "on call" time was compensated from the time he left his home until the time he returned thereto. (Compare Exhibit G with Jose Gonzalez Affidavit, attached in support of plaintiff's motion)  As to plaintiff's third and final claim, it similarly appears that plaintiff has abandoned this claim as there is no mention of it anywhere in the foregoing moving papers.  It is likely that plaintiff has abandoned this claim for two reasons: (1) plaintiff is not entitled to any "uniform allowance" as he is paid well above minimum wage; and (2) in any event, Aramark cleans Auto-Chlor's uniforms not because of any legal obligation to do so, but because it presents a better product. (Id.; see also Employee and Management Affidavits attached hereto)

It is peculiar that, while the plaintiff has essentially abandoned two of his three initial claims, plaintiff now asserts a new claim in support of the foregoing motion wherein he now claims that Auto-Chlor supposedly had a policy of "shorting" or "reducing" employees "on call" hours, which is likewise without merit.  Indeed, it is clear based upon the affidavits submitted herein and the sample set of documents attached hereto that no such policy exists at Auto-Chlor. Yet, it is respectfully submitted that the plaintiff's submission of a conclusory, unsupported declaration in support of a motion for collective notice is insufficient under the law.  Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 510 (SDNY 2010); see also Morales v. Plantworks, Inc., 2006 WL 278154, at *3 (SDNY 2006) (*plaintiff's supporting allegations must be specific, not conclusory*); see also Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 41 (EDNY 2008) (*"Where the court finds the class representative is not credible, adequacy of representation is absent."*).

In support of his conclusory, unsupported claim, he submits two conclusory, "fill in the

10

blank" declarations of former employees that constitute nothing more than identical "copy and paste" statements cropped from Henry's affidavit and then finished with two unsworn signature pages that contain no text on them at all to verify what has actually been signed. Moreover, even these declarations contain only conclusory, unsupported inadmissible hearsay statements, most of which are disproven by the business records and sworn statements annexed hereto. It is respectfully submitted that submitting these three conclusory, unsupported declarations is insufficient to meet plaintiff's burden as the same are "too conclusory to establish the requisite factual nexus with [any] other members of the putative collective action." Lin, supra at 510; see also Morales, at *3; Mendoza v. Casa de Cambio Delgado, Inc., 2008 WL 938584, at *2 (SDNY 2008) (*in denying collective certification, rejecting "affidavits by the former employees [which] appear to be boilerplate and virtually identical"*).

Moreover, it is respectfully submitted that the Affidavit of Richard Keating ("Richie"), as fully set forth in the management affidavits herein, should be completely disregarded as nearly every fact set forth therein is disproven by the affidavits and documents submitted herein. (See Keating Personnel File, attached hereto as Exhibit H; see also Argento Personnel file, attached hereto as Exhibit I) More importantly, Richie's personnel file, which constitutes a business record, demonstrates that Richie as a documented history of lying as there are numerous write-ups in Richie's Personnel File for just that. (Exhibit H) It is also of no little consequence that both Richie and Henry were written up numerous times by Sam Villanueva, the very person they are now claiming supposedly shorted their hours. (Exhibits F and H) Dupler, supra at 41.

Not only are the two declarations lacking substance, they are also not applicable to support any claim of a collective class as these two individuals are not similarly situated with the plaintiff as they were neither paid the same nor did they have the same job title or duties. As set forth fully in the affidavits of Villanueva, Lacey, Bugiada and Bertkau submitted herein, the

11

plaintiff was an installer, who was responsible for installing the commercial dishwashing equipment and was compensated on a flat hourly rate. The two individuals whose declarations the plaintiff submitted held other positions and were not compensated the same as the plaintiff. Paul Argento was a route driver, which means that he was a quasi-salesman, who was paid a base salary plus commissions. Richie was a route driver, then an operations manager, and then a rebuilder, which yielded a base rate plus commission, a salary plus bonus and then an hourly rate respectively. As neither of these two employees held the same position or received the same pay, it cannot be said that they are similarly situated. Anglda v. Linens'N'Things, Inc., 2007 WL 1552511, at *3-5 (SDNY 2007) (*rejecting nationwide class where plaintiff offered no supporting declarations from putative class members*); Evancho, supra at *4; Diaz v. Elecs. Boutique of America, Inc., 2005 WL 2654270, at *4 (WDNY 2005).

It is likewise of no little consequence that plaintiff seeks to make this a franchise wide fishing expedition, yet, does not submit one single affidavit of anyone from any other branch to evidence that there is any proof that the practices he complains of were franchise wide. In an attempt to overcome this obvious defect in his papers, the plaintiff and the two other declarants make conclusory, unsupported statements that they supposedly had conversations with employees from other branches about how they were compensated while not saying when, where and with whom these supposed conversations took place. It is respectfully submitted that these declarations cannot support a franchise wide class. See Richards v. Computer Scis. Corp., 2004 WL 2211691, at *2 (D.Conn. 2004) (*affidavits in support of a collective notice must be based on actual "personal knowledge"*); Guillen, 750 F. Supp. 2d at 477 (*plaintiff not "similarly situated" where he had "no personal knowledge about how stores other than those at which he was an employee, operated."*); Mendoza, supra, at *2 (*rejecting "umbrella-like" affidavit in support of collective notice*); Diaz, supra at *4 (where plaintiffs are not "similarly situated" to

12

anyone else, refusing to conditionally certify even subgroups of employees); <u>Hendricks v. J.P. Morgan Chase Bank, N.A.</u>, 263 F.R.D. 78, 86 (D. Conn. 2009) (***rejecting conditional certification where there are "differences between the substantive job responsibilities of potential class members"***); <u>In re Penthouse Exec. Club Comp. Litig</u>, 2010 WL 4340255, at *3 (SDNY 2010) (***"uncontroversial concept that where workers have different job titles and responsibilities, uniform classification of these disparate groups of workers . . . does not, alone, justify class certification" even where nine "sufficient[ly] detail[ed]" declarations were submitted, granting certification to "putative class [of] individuals with the same job title, the same job responsibilities, and who all worked at a single adult entertainment club."***)

As plaintiff has presented no evidence of similarly situated individuals from any other branch, or even his own for that matter, it is respectfully submitted that plaintiff's motion for collective notice should be, in all respects, denied.  <u>Hendricks</u>, 263 F.R.D. at 87 (***where plaintiffs "have offered no evidence from proposed class members themselves...plaintiffs have failed to show that the proposed members of the FLSA class are 'similarly situated[.]'"***).

## II.   <u>PLAINTIFF'S DEMAND FOR A SIX-YEAR NOTICE PERIOD IS UNWARRANTED</u>

It is respectfully submitted in the case at bar that the plaintiff herein has presented absolutely no factual or legal basis to toll or extend the FLSA statute of limitations period to six years.  Indeed, plaintiff's entire argument section is devoid of any actual factual basis whatsoever that demonstrates that extending or tolling the FLSA statute of limitations is permissible or warranted under the circumstances.  The three boilerplate affidavits plaintiff submitted in support of the foregoing motion fare plaintiff no better.  As such, plaintiff's request that the FLSA statute of limitations be tolled and/or expanded should be denied in its entirety.

III.    **THIS COURT SHOULD REJECT PLAINTIFF'S PROPOSED NOTICEAS IT IS UNREASONABLY EXPANSIVE AND THIS COURT SHOULD BE INVOLVED IN THE DRAFTING OF ANY COLLECTIVE ACTION NOTICE TO ENSURE THAT IT IS NARROWLY TAILORED TO REDUCE THE RISK OF PREJUDICE TO ANY PARTY**

It is respectfully submitted in the case at bar that, if the Court finds that conditionally certifying a collective action is still warranted despite the fact that, while plaintiff has failed in his burden herein and defendant has produced an abundance of evidence that this case has no merit, defendant respectfully requests that this Court participate in carefully tailoring the class notice to ensure that it results in the least prejudice to the parties herein.

In Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 172 (1989), the United States Supreme Court stated as follows:

> "By monitoring preparation [b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner."

It is respectfully requested that, should this Court find sufficient cause to grant the foregoing motion, that this Court participate in the drafting of and be given the final approval therefore after a determination of this motion has been made.

## CONCLUSION

It is respectfully submitted in the case at bar that, while the plaintiff has not met his burden of demonstrating that there are any other similarly situated employees, the defendant has presented this Court with an abundance of credible, admissible evidence that there are not only no other similarly situated individuals, but that the plaintiff is also not similarly situated as there is simply no basis in fact to any of the claims made by plaintiff in his Complaint or his affidavit in support.  Thus, for all of the foregoing reasons, defendant respectfully requests that plaintiff's

motion be denied in its entirety, and for such other, further and different as may seem just, proper and equitable under the circumstances.

Dated:  Garden City, New York
        December 7, 2012

                                        WEINSTEIN, KAPLAN & COHEN, P.C.
                                        Attorney for Defendant

                                        By: _____
                                              DANIELE D. DE VOE