UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSE HENRY GONZALEZ,
Individually and on behalf of all
others similarly situated,                                           **AFFIDAVIT**

                Plaintiff,

     -against-                                                       Case No. 12-CV-3465 (BMC)

AUTO-CHLOR SYSTEM OF NEW YORK
CITY, INC., et. al.,

                Defendants.
-----------------------------------------------------------X
STATE OF NEW YORK)
                SS.:
COUNTY OF QUEENS)

      DERECK DOOKHAN, being duly sworn, deposes and says:

      1.     I have worked for AUTO-CHLOR SYSTEM OF NEW YORK CITY, INC. (hereinafter "Auto-Chlor") for approximately 3 years/months, or since September, 2009.

      2.     When I began working for Auto-Chlor, my title was Route Driver. My duties as a Route Driver are to service machines, deliver chemicals and pick up payments from current customers.

      3.     The person who I reported to at Auto-Chlor when I first began and currently is Sam Villanueva (hereinafter "Sam").

      4.     When I began working for Auto-Chlor, I was provided with approximately 10 uniforms, which consist of a button down shirt and slacks that have the Auto-Chlor logo on them.

5. My uniforms are cleaned weekly by a company called Aramark. If my uniform gets ratty or torn, Auto-Chlor replaces my uniform. I have never been charged for my uniform.

6. When I first started working for Auto-Chlor, I made $11.00 per hour, plus commission, plus time and a half for overtime and all "on call" time. I currently make $11.25 per hour, plus commission, plus time and a half for all hours worked over forty in one week.

7. As far as benefits go, Auto-Chlor is very generous. In addition to my regular rate of pay, I also receive paid sick time, holidays and vacation time. Not only that, but Auto-Chlor is allowing me participate in profit sharing.

8. When I first started working for Auto-Chlor, my regular shift was from 8:00 A.M. until 6:00PM, with a one hour break each day, 5 days a week, or Monday through Friday. After my training period, which was about 3 months, I was also required to work "on call" on a rotation, which resulted in me working on call for one week out of approximately every 5-7 weeks, depending on the number of employees on staff.

9. Currently, my regular shifts begins at 8:00 A.M. and ends when I am finished with my jobs for the day, with a half hour lunch break each day, 5 days a week or Monday through Friday. I am paid time and a half for any hours I work in excess of 40 hours per week. I still work "on call" on rotation, which results in me working "on call" one day each week and one weekend approximately every 5-7 weeks or so, depending on the number of employees on staff.

10. When I am "on call", I am not required to be at work, but am allowed to do whatever I want so long as I am available a phone call away to respond to customer issues. When a customer reports an issue with their machine when I am "on call", I am notified and leave wherever I am to service the customer. I am compensated for my "on call" time by keeping time log of the time from when I leave my house, or current location, until I return home, or to my current location. At the end of my "on call" period, I report my time to my supervisor, Sam, so that he include my time in that week's payroll.

11. For the entire time that I have worked for Auto-Chlor, it has always been company policy that "on call" time is compensated from the time we leave our house until the time we return home, and everyone knows that. Everyone also knows that the reporting of our "on call" time is based upon the "honor system" and that our boss relies upon us to accurately report our time. I have always been paid for the time I have reported to my boss and that time has always included my travel time from my home to the customer's location and my travel time from the customer's location back home.

12. I have been told that the plaintiff in this case is claiming that the "on call" time is reported from the time we arrive at the customer's location until the time we leave the customer's location. That simply is not true and has not been the policy of Auto-Chlor at least as long as I have been here.

13. If I ever had a problem with my paycheck, I know that it is Auto-Chlor's policy that any discrepancy be reported to my boss, Sam, and I know that it would be taken care of immediately. In fact, I did have a concern about my paycheck once and

went to Sam who explained the discrepancy to me and confirmed that I was actually paid what I was entitled to be paid.

14. Jose "Henry" Gonzales worked for Auto-Chlor during the time I worked here. I didn't actually work with him though because he was an Installer and I was a Router Driver, so his job was totally different than mine. I really only saw him for about 20 minutes in the morning while we loaded our trucks and about 20 minutes at the end of the day when we returned to the warehouse. He also was required to work "on call", however, I do not know how he was compensated for that time.

15. As far as I know, there is no basis in fact to Henry's claim that he was not paid "on call" time from the time he left his house until the time arrived back home. Henry never complained to me that he was not being compensated for all of his "on call" time and I never witnessed Henry complaining to anyone about his "on call" compensation.

16. I am not aware of anyone ever not being compensated for their "on call" time from the time they left home until the time they returned thereto.

_____
DERECK DOOKHAN

Sworn to before me this
24th day of October 2012.

_____
NOTARY PUBLIC

Kristin J Kirchheim
Notary Public, State of New York
No. 02KI6341500
Qualified in Nassau County
Commission Expires May 23, 2015